**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CHAZ J. MacFALLING,<br><br>                    Plaintiff,<br><br>          v.<br><br>D. NETTLETON, *et al.*,<br><br>                    Defendants. | Case No. CV 17-02399 SVW (AFM)<br><br>**ORDER DISMISSING COMPLAINT WITH LEAVE TO AMEND** |

On March 28, 2017, plaintiff, an inmate presently held at the Wasco State Prison in Wasco, California, filed a Complaint in this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. He subsequently was granted leave to proceed without prepayment of the full filing fee. The Complaint arises from incidents that occurred while plaintiff was held at the California Men's Colony ("CMC"). (ECF No. 1 at 3.) Plaintiff names as defendants correctional officers D. Nettleton, Biallas, M. DeCastro, R. Nicholson, C. LaPraim, T. Lawsford, M. Grijalva, and Acting Associate Warden J. Core. All defendants are named in their official as well as individual capacities. (*Id.* at 3-4.)

Plaintiff's claims arise from an incident that occurred at CMC on September 22, 2016, when correctional officers removed a sign with a message about "Black Lives Matter" that plaintiff was wearing taped to the back of his shirt

while he was working on the kitchen loading dock.  After plaintiff refused a request to remove the sign, plaintiff was searched, handcuffed, and locked in a small cell for three and a half hours.  Plaintiff alleges that the handcuffs were applied too tightly and caused pain, cuts, and abrasions.  Plaintiff subsequently was placed in Administrative Segregation ("Ad. Seg.").  On October 8, 2016, plaintiff was found guilty of a Rule Violation Report ("RVR"), and he was assessed a loss of credit.  (*Id.* at 4-11.)  Plaintiff purports to raise a "Claim No. 1" for retaliation and deliberate indifference (*id.* at 11-12); a "Claim No. 2" against LaPraim for placing him into Ad. Seg. as retaliation for plaintiff wearing the sign (*id.* at 12-13); and a "Claim No. 3" for assessing plaintiff with, *inter alia*, a "loss of credit because of plaintiff wearing a sign" (*id.* at 13).  Plaintiff seeks compensatory and punitive damages. (*Id.* at 14.)

In accordance with the terms of the "Prison Litigation Reform Act of 1995" ("PLRA"), the Court has screened the Complaint prior to ordering service for purposes of determining whether the action is frivolous or malicious; or fails to state a claim on which relief may be granted; or seeks monetary relief against a defendant who is immune from such relief.  *See* 28 U.S.C. §§ 1915(e)(2), 1915A(b); 42 U.S.C. § 1997e(c)(1).  The Court's screening of the pleading under the foregoing statutes is governed by the following standards.  A complaint may be dismissed as a matter of law for failure to state a claim for two reasons:  (1) lack of a cognizable legal theory; or (2) insufficient facts under a cognizable legal theory. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990); *see also Rosati v. Igbinoso*, 791 F.3d 1037, 1039 (9th Cir. 2015) (when determining whether a complaint should be dismissed for failure to state a claim under the PLRA, the court applies the same standard as applied in a motion to dismiss pursuant to Rule 12(b)(6)).  In determining whether the pleading states a claim on which relief may be granted, its allegations of material fact must be taken as true and construed in the light most favorable to plaintiff.  *See Love v. United States*, 915 F.2d 1242, 1245

(9th Cir. 1989). However, the "tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Nor is the Court "bound to accept as true a legal conclusion couched as a factual allegation." *Wood v. Moss*, 134 S. Ct. 2056, 2065 n.5 (2014) (citing *Iqbal*, 556 U.S. at 678). Rather, a court first "discounts conclusory statements, which are not entitled to the presumption of truth, before determining whether a claim is plausible." *Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1129 (9th Cir. 2013), *cert. denied*, 134 S. Ct. 1322 (2014). Then, "dismissal is appropriate where the plaintiff failed to allege enough *facts* to state a claim to relief that is plausible on its face." *Yagman v. Garcetti*, 852 F.3d 859, 863 (9th Cir. 2017) (internal quotation marks omitted, emphasis added).

Further, since plaintiff is a prisoner appearing *pro se*, the Court must construe the allegations of the pleading liberally and must afford plaintiff the benefit of any doubt. *See Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010); *see also Alvarez v. Hill*, 518 F.3d 1152, 1158 (9th Cir. 2008) (because a prisoner was proceeding *pro se*, "the district court was required to 'afford [him] the benefit of any doubt' in ascertaining what claims he 'raised in his complaint'") (alteration in original). However, the Supreme Court has held that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. . . . Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted, alteration in original); *see also Iqbal*, 556 U.S. at 678 (To avoid dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' . . . A claim has facial plausibility when the plaintiff pleads factual content

that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." (internal citation omitted)).

In addition, Fed. R. Civ. P. 8(a) states:

> A pleading that states a claim for relief must contain: (1) a short and plain statement of the grounds for the court's jurisdiction . . .; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

(Emphasis added). Further, Rule 8(d)(1) provides: "Each allegation must be simple, concise, and direct. No technical form is required." Although the Court must construe a *pro se* plaintiff's pleadings liberally, a plaintiff nonetheless must allege a minimum factual and legal basis for each claim that is sufficient to give each defendant fair notice of what plaintiff's claims are and the grounds upon which they rest. *See, e.g., Brazil v. United States Dep't of the Navy*, 66 F.3d 193, 199 (9th Cir. 1995); *McKeever v. Block*, 932 F.2d 795, 798 (9th Cir. 1991) (a complaint must give defendants fair notice of the claims against them). If a plaintiff fails to clearly and concisely set forth factual allegations sufficient to provide defendants with notice of which defendant is being sued on which theory and what relief is being sought against them, the pleading fails to comply with Rule 8. *See, e.g., McHenry v. Renne*, 84 F.3d 1172, 1177-79 (9th Cir. 1996); *Nevijel v. Northcoast Life Ins. Co.*, 651 F.2d 671, 674 (9th Cir. 1981). A claim has "substantive plausibility" if a plaintiff alleges "simply, concisely, and directly [the] events" that entitle him to damages. *Johnson v. City of Shelby*, 135 S. Ct. 346, 347 (2014). Failure to comply with Rule 8 constitutes an independent basis for dismissal of a pleading that applies even if the claims are not found to be wholly without merit. *See McHenry*, 84 F.3d at 1179; *Nevijel*, 651 F.2d at 673.

Following careful review of the Complaint, the Court finds that it fails to comply with Rule 8 because it fails to state a short and plain statement of each

claim that is sufficient to give each defendant fair notice of what plaintiff's claims are and the grounds upon which they rest. In addition, its allegations appear insufficient to state any claim upon which relief may be granted. Accordingly, the Complaint is dismissed with leave to amend. *See Rosati*, 791 F.3d at 1039 ("A district court should not dismiss a *pro se* complaint without leave to amend unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment.") (internal quotation marks omitted).

**If plaintiff desires to pursue this action, he is ORDERED to file a First Amended Complaint no later than thirty (30) days after the date of this Order, remedying the deficiencies discussed below.** Further, plaintiff is admonished that, if he fails to timely file a First Amended Complaint, or fails to remedy the deficiencies of this pleading as discussed herein, the Court will recommend that this action be dismissed without leave to amend and with prejudice.[1]

## A.   Official capacity claims

The Eleventh Amendment bars a plaintiff's federal civil rights claims for monetary damages against any state official in his or her official capacity. The Eleventh Amendment bars federal jurisdiction over suits by individuals against a State and its instrumentalities, unless either the State consents to waive its

---

[1]   Plaintiff is advised that this Court's determination herein that the allegations in the Complaint are insufficient to state a particular claim should not be seen as dispositive of that claim. Accordingly, although this Court believes that you have failed to plead sufficient factual matter in your pleading, accepted as true, to state a claim to relief that is plausible on its face, you are not required to omit any claim or defendant in order to pursue this action. However, if you decide to pursue a claim in a First Amended Complaint that this Court has found to be insufficient, then this Court, pursuant to the provisions of 28 U.S.C. § 636, ultimately may submit to the assigned district judge a recommendation that such claim be dismissed with prejudice for failure to state a claim, subject to your right at that time to file Objections with the district judge as provided in the Local Rules Governing Duties of Magistrate Judges.

sovereign immunity or Congress abrogates it. *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 99-100 (1984). In addition, "the eleventh amendment bars actions against state officers sued in their official capacities for past alleged misconduct involving a complainant's federally protected rights, where the nature of the relief sought is retroactive, *i.e.*, money damages." *Bair v. Krug*, 853 F.2d 672, 675 (9th Cir. 1988). To overcome this Eleventh Amendment bar, the State's consent or Congress' intent must be "unequivocally expressed." *Pennhurst*, 465 U.S. at 99. While California has consented to be sued in its own courts pursuant to the California Tort Claims Act, such consent does not constitute consent to suit in federal court. *See BV Engineering v. Univ. of Calif.*, 858 F.2d 1394, 1396 (9th Cir. 1988). Finally, Congress has not repealed state sovereign immunity against suits brought under 42 U.S.C. § 1983.

Here, the Complaint names all defendants in their official capacities. (ECF No. 1 at 3.) However, all defendants are alleged to be employees of the California Department of Corrections and Rehabilitation ("CDCR"), which, as a state agency, is immune from civil rights claims raised pursuant to § 1983. *See Pennhurst*, 465 U.S. at 100 ("This jurisdictional bar applies regardless of the nature of the relief sought."); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978) (per curiam) (the Eleventh Amendment bars claim for injunctive relief against Alabama and its Board of Corrections). Therefore, because all defendants are employees of the CDCR, plaintiff may not seek monetary damages against any defendant in his or her official capacity.

**B.    Rule 8**

Plaintiff's Complaint violates Rule 8 in that his "Claim No. 1" purports to raise claims under both the First Amendment for retaliation and under the Eighth Amendment for deliberate indifference. (ECF No. 1 at 4, 11-12.) Additionally, this one "claim" incorporates multiple factual allegations concerning, "threatening" and

"taunting" conduct, searches, handcuffs applied too tightly, failure to provide medical attention, detention in a small cell for three and a half hours, forcing plaintiff to "hold his blatter [sic] for over an hour" (*id.* at 4-12), as well as the ripping of the sign from plaintiff's back after plaintiff refused an order to remove the sign (*id.* at 4-5). Plaintiff appears to allege that defendants Nettleton and Biallas placed handcuffs on too tightly, refused to loosen the handcuffs while plaintiff was held in the small cell, and taunted plaintiff in retaliation for plaintiff's wearing of the sign (*id.* at 6-7), but he also appears to be raising one or more claims alleging that these actions constituted "deliberate indifference in violation of the Eighth Amendment" (*id.* at 12).

In this same "Claim No. 1," plaintiff additionally alleges that unnamed "escorting officers" again placed the handcuffs on plaintiff too tightly when they put him back in the small cage after he had been interviewed, but it is unclear if plaintiff is purporting to allege that these unnamed officers were acting in a retaliatory manner. (*Id.* at 8.) "John Doe" defendants also refused to allow plaintiff to use a restroom "for over an hour," but plaintiff again does not specify if this conduct was retaliatory, or if he is purporting to allege that this conduct violated the Eighth Amendment. (*Id.* at 8-9.) Further, in this same claim, plaintiff also alleges that "John Doe" defendants "failed to provide plaintiff any medical assistance" at an unspecified time (*id.* at 8), but it again is not clear if this failure is alleged to be retaliatory, or whether plaintiff ever received the necessary medical care.

Because plaintiff appears to raise numerous claims under multiple grounds against different defendants within his one "claim," plaintiff's Complaint fails to meet the minimal requirement of Rule 8 that a pleading allow each defendant to discern what he or she is being sued for. *See McHenry*, 84 F.3d at 1177; *see also Twombly*, 550 U.S. at 555 ("[f]actual allegations must be enough to raise a right to relief above the speculative level"). The Court remains mindful that, because plaintiff is appearing *pro se*, the Court must construe the allegations of the

Complaint liberally and must afford plaintiff the benefit of any doubt. That said, the Supreme Court has made clear that the Court has "no obligation to act as counsel or paralegal to *pro se* litigants." *Pliler v. Ford*, 542 U.S. 225, 231 (2004). In addition, the Supreme Court has held that, while a plaintiff need not plead the legal basis for a claim, the plaintiff must allege "simply, concisely, and directly events" that are sufficient to inform the defendants of the "factual basis" of each claim. *Johnson*, 135 S. Ct. at 347.

Accordingly, the Court finds that plaintiff's Complaint violates Rule 8 because it fails to set forth a simple, concise, and direct statement of the factual basis of each of plaintiff's claims against each defendant.

## C.    Retaliation claims

Plaintiff's Complaint raises several claims of retaliation, all apparently arising from plaintiff's conduct of wearing a sign with a political message taped to the back of his shirt while "working on the dock of the main kitchen." Plaintiff alleges that he refused Officer Nettleton's order to remove the sign, and that plaintiff told Officer Nettleton that "it's my right to wear this." (*See* ECF No. 1 at 4-5, 9.) Plaintiff alleges that various actions were taken by defendants "only because he had worn a sign taped on his back," and that he was "exercising his First Amendment right to freedom of speech." (*Id.* at 7, 11.)

An action taken in retaliation for the exercise of a First Amendment right is actionable under § 1983. *See Hines v. Gomez*, 108 F.3d 265, 267 (9th Cir. 1997); *Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995). As the Ninth Circuit set forth in *Watison v. Carter*, 668 F.3d 1108, 1114-15 (9th Cir. 2012) (alterations and emphasis in original), a prisoner's retaliation claim has five elements:

> First, the plaintiff must allege that the retaliated-against conduct is protected. The filing of an inmate grievance is protected conduct. *Rhodes v. Robinson*, 408 F.3d 559, 568 (9th Cir. 2005). Second, the plaintiff must claim the defendant took adverse action against the

plaintiff. *Id.* at 567. The adverse action need not be an independent constitutional violation. *Pratt*, 65 F.3d at 806. "[T]he mere threat of harm can be an adverse action …" *Brodheim v. Cry*, 584 F.3d 1262, 1270 (9th Cir. 2009). [¶] Third, the plaintiff must allege a causal connection between the adverse action and the protected conduct. Because direct evidence of retaliatory intent rarely can be pleaded in a complaint, allegation of a chronology of events from which retaliation can be inferred is sufficient to survive dismissal. *See Pratt*, 65 F.3d at 808 ("timing can properly be considered as circumstantial evidence of retaliatory intent"); *Murphy v. Lane*, 833 F.2d 106, 108-09 (7th Cir. 1987). [¶] Fourth, the plaintiff must allege that the "official's acts would chill or silence a person of ordinary firmness from future First Amendment activities." *Robinson*, 408 F.3d at 568 (internal quotation marks and emphasis omitted). "[A] plaintiff who fails to allege a chilling effect may still state a claim if he alleges he suffered some other harm," *Brodheim*, 584 F.3d at 1269, that is "more than minimal," *Robinson*, 408 F.3d at 568 n.11. That the retaliatory conduct did not chill the plaintiff from suing the alleged retaliator does not defeat the retaliation claim at the motion to dismiss stage. *Id.* at 569. [¶] Fifth, the plaintiff must allege "that the prison authorities' retaliatory action did not advance legitimate goals of the correctional institution …" *Rizzo v. Dawson*, 778 F.2d 527, 532 (9th Cir. 1985). A plaintiff successfully pleads this element by alleging, in addition to a retaliatory motive, that the defendant's actions were arbitrary and capricious, *id.*, or that they were "unnecessary to the maintenance of order in the institution," *Franklin v. Murphy*, 745 F.2d 1221, 1230 (9th Cir. 1984).

Here, as set forth above, plaintiff's Complaint fails to clearly allege the factual basis of each retaliation claim that he is raising against each defendant. Moreover, the Complaint does not clearly allege a causal connection between plaintiff's arguably protected conduct of wearing a placard and the numerous adverse actions various prison officials took. In addition, plaintiff's factual allegations are insufficient to raise a reasonable inference that the alleged adverse actions "did not advance legitimate goals of the correctional institution." *See, e.g., Mangiaracina v. Penzone*, 849 F.3d 1191, 1197 (9th Cir. 2017) (courts "defer to the judgment of corrections authorities, particularly with regard to matters of security, because we recognize that '[r]unning a prison [or jail] is an inordinately difficult

undertaking' with which prison or jail authorities have particular expertise" (citing *Turner v. Safley*, 482 U.S. 78, 84-85 (1987), alterations in original).

A "prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Jones v. Williams*, 791 F.3d 1023, 1035 (9th Cir. 2015) (citing *Pell v. Procunier*, 417 U.S. 817, 822 (1974)). The determination of whether a speaker's speech is "protected" by the First Amendment, however, "depends on where he is" at the time that he engages in the speech or expressive conduct. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 388 (6th Cir. 1999). It is clear that a prisoner retains First Amendment rights to file an administrative grievance or to access the courts to pursue specific types of legal cases. *See Lewis v. Casey*, 518 U.S. 343, 354-55 (1996) (access to the courts); *Brodheim*, 584 F.3d at 1269 (prison grievance). However, prison officials may lawfully impose limitations on a prisoner's speech or other First Amendment activities. The Supreme Court has held that "a prison regulation [that] impinges on inmates' constitutional rights . . . is valid if it is reasonably related to legitimate penological interests." *Turner*, 482 U.S. at 89, 91-92 (finding no violation of prisoners' First Amendment rights where, although they were precluded from communicating with fellow prisoners, the 'regulation [did] not deprive prisoners of all means of expression"); *see also Jones v. N.C. Prisoners' Labor Union, Inc*., 433 U.S. 119, 132 (1977) (prison officials may "curtail" a prisoner's First Amendment associational rights if they determine that particular conduct poses a "likelihood of disruption to prison order or stability, or otherwise interfere[s] with [] legitimate penological objectives"). When assessing the constitutionality of prison regulations that restrict inmates' constitutional rights, courts apply the four-part test set forth in *Turner*:

> We ask (1) whether there is a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it; (2) whether there are alternative means of exercising the right

that remain open to prison inmates; (3) what impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally; and (4) whether there is an absence of ready alternatives.

*Nordstrom v. Ryan*, 856 F.3d 1265, 1272 (9th Cir. 2017) (internal quotation marks omitted).

Here, it is not clear that the First Amendment protects a prisoner's action in attaching a placard with a political message to the back of his shirt while working on a prison job, but it is clear that plaintiff's refusal to comply with Officer Nettleton's order to remove the placard was not protected conduct. Although a prisoner has a First Amendment right to file a written prison grievance, a prisoner's verbal challenge to a prison official's direct order is not protected First Amendment activity. *See, e.g., Parran v. Wetzel*, 2016 WL 1162328, *6, 2016 U.S. Dist. LEXIS 37340, *16 (M.D. Pa., Mar. 23, 2016) ("an inmate's First Amendment rights do not include the right to debate staff orders prior to obeying them, disregard prison rules, or engage in activities that may incite a disturbance"); *Rangel v. LaTraille*, 2014 WL 4163599, at *8, 2014 U.S. Dist. LEXIS 116262, at *21 (E.D. Cal., Aug. 20, 2014) (collecting cases and finding that inmate's "refusal to comply with orders is not protected conduct under the First Amendment").

The Court finds that, as presently alleged, the factual allegations in the Complaint are insufficient to raise a reasonable inference that plaintiff's conduct of wearing a placard attached to his clothing while working at a prison job was "the substantial or motivating factor behind" each defendant's adverse actions rather than plaintiff's refusal to comply with a direct order of a prison official. *See Brodheim*, 584 F.3d at 1271 (internal quotation marks omitted). A Complaint that pleads factual allegations "merely consistent with a defendant's liability . . . stops short of the line between possibility and plausibility," and fails to state a plausible claim. *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted). Accordingly,

plaintiff's factual allegations are insufficient to "nudge" his retaliation claims "across the line from conceivable to plausible." *Twombly,* 550 U.S. at 570.

### D. <u>Eighth Amendment claims</u>

Plaintiff's Complaint appears to allege multiple claims for "deliberate indifference" within his Claim 1. (ECF No. 1 at 4, 12.) Plaintiff alleges that Officers Nettleton and Biallas "converged upon plaintiff with pepper spray and batons" and subjected plaintiff to a second "clothed body search." (*Id.* at 5.) Plaintiff also alleges that Officer Nettleton applied handcuffs that were "extremely tight," and Officers Nettleton and Biallas repeatedly refused to loosen the handcuffs after plaintiff complained that they were "too tight and causing him pain." (*Id.* at 5-7.) Plaintiff was placed in a "3' x 3' cage" where "he was left to stand in much pain for three and a half hours." (*Id.* at 6.) Officers Nettleton and Biallas periodically "would taunt plaintiff" through the window about the sign that he had been wearing on his back. (*Id.* at 6.) The handcuffs were removed after three and a half hours when plaintiff was taken for an interview. Plaintiff showed "John Does" the "cuts and abrasions on his wrists and swollen hands caused by the too tight handcuffs," but plaintiff was not provided with any medical assistance. (*Id.* at 7-8.) Plaintiff also alleges that he was "forced" by "John Does" "to hold his blatter [sic] for over an hour before he was allowed to use the restroom." (*Id.* at 8-9, 12.)

### 1. *Overly tight handcuffs*

To the extent that plaintiff is purporting to raise a claim pursuant to the Eighth Amendment for the use of overly tight handcuffs, the Ninth Circuit has recognized that, in the context of an arrest, the use of excessively tight handcuffs may constitute a violation of the Fourth Amendment. *See, e.g., Wall v. County of Orange*, 364 F.3d 1107, 1112 (9th Cir. 2004) ("It is well-established that overly tight handcuffing can constitute excessive force."); *LaLonde v. County of Riverside*,

204 F.3d 947, 960 (9th Cir. 2000) ("A series of Ninth Circuit cases has held that tight handcuffing can constitute excessive force."); *Palmer v. Sanderson*, 9 F.3d 1433, 1436 (9th Cir. 1993) (holding that the "abusive application of handcuffs" causing pain and bruising was unconstitutional). In the prison context, however, a claim of the use of excessive force by a prison official against a convicted prisoner is evaluated under the Eighth Amendment. *See Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992). Under the Eighth Amendment, not "every malevolent touch by a prison guard" violates a prisoner's constitutional rights. *Hudson*, 503 U.S. at 9; *see also Watison*, 668 F.3d at 1113-14. The use of force against prisoners "does not amount to a constitutional violation . . . if it is applied in a good faith effort to restore discipline and order and not 'maliciously and sadistically for the very purpose of causing harm.'" *Clement v. Gomez*, 298 F.3d 898, 903 (9th Cir. 2002) (quoting *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986)).

The Supreme Court has held that the "Eighth Amendment's prohibition of 'cruel and unusual' punishment necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" *Hudson*, 503 U.S. at 9-10. Here, it is not clear from plaintiff's Complaint if he is purporting to allege that any defendant applied handcuffs too tightly and refused to loosen them "maliciously and sadistically for the very purpose of causing harm" and that such force is of the sort "repugnant to the conscience of mankind." However, the Court notes that the type of force that falls within the bounds of the Eighth Amendment when used by correctional officers in a prison context against an incarcerated prisoner may "be unlawful outside of prison walls." *See United States v. Waldman*, 835 F.3d 751, 754 (7th Cir. 2016). Accordingly, the constitutional analysis for an Eighth Amendment claim turns on "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Furnace v. Sullivan*, 705 F.3d 1021, 1028 (9th Cir. 2013)

If plaintiff wishes to state any claim pursuant to the Eighth Amendment against any defendant arising from the use of overly tight handcuffs, then he should set forth a separate claim stating a "short and plain statement" of each such claim against each defendant. *See* Fed. R. Civ. P. 8(a)(2).

### 2. *Medical care*

To the extent that plaintiff wishes to raise a claim for constitutionally inadequate medical care with his allegation that he received "no medical assistance" for his wrists and hands after the handcuffs were removed, plaintiff also should set forth a short and plain statement of the factual grounds for any such claim and identify the specific defendant(s) he is purporting to raise such claim against. (*See* ECF No. 1 at 8, 12.)

In order to establish a claim under the Eighth Amendment for inadequate medical care, a prisoner must show that a specific defendant was deliberately indifferent to his serious medical needs. *See Helling v. McKinney*, 509 U.S. 25, 32 (1993); *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). "This includes both an objective standard – that the deprivation was serious enough to constitute cruel and unusual punishment – and a subjective standard – deliberate indifference." *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014) (internal quotation marks omitted).

First, to meet the objective element of a deliberate indifference claim, "a prisoner must demonstrate the existence of a serious medical need." *Colwell*, 763 F.3d at 1066. "A medical need is serious if failure to treat it will result in significant injury or the 'unnecessary and wanton infliction of pain.'" *Peralta v. Dillard*, 744 F.3d 1076, 1081 (9th Cir. 2014) (en banc), *cert. denied*, 135 S. Ct. 946 (2015) (internal quotation marks omitted). Here, plaintiff's Complaint appears to allege that he suffered pain, "cuts and abrasions" on his wrists, and "swollen hands" from the handcuffs. (ECF No. 1 at 8, 12.) Plaintiff does not allege that any of these

symptoms persisted. Accordingly, it does not appear to the Court that, objectively, plaintiff's injuries rise to the level of a "significant injury" or the "wanton infliction of pain." *See Peralta*, 744 F.3d at 1081.

Second, to meet the subjective element, a prisoner must "demonstrate that the prison official acted with deliberate indifference." *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004). Deliberate indifference may be manifest by the intentional denial, delay or interference with a plaintiff's medical care. *See Estelle*, 429 U.S. at 104-05. A specific prison official, however, "must not only 'be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" *Toguchi*, 391 F.3d at 1057 (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). Thus, an inadvertent failure to provide adequate medical care, negligence, a mere delay in medical care (without more), or a difference of opinion over proper medical treatment, all are insufficient to constitute an Eighth Amendment violation. *See Estelle*, 429 U.S. at 105-07; *Toguchi*, 391 F.3d at 1059-60; *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989); *Shapley v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985). Moreover, the Eighth Amendment does not require optimal medical care or even medical care that comports with the community standard of medical care. "[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106.

Here, plaintiff's general allegation that he was not provided with "any medical assistance" for an unspecified time period (ECF No. 1 at 8) fails to allege that any specific defendant was subjectively aware of any serious medical need and acted with deliberate indifference by intentionally denying, delaying, or interfering with plaintiff's medical care. Further, to the extent that plaintiff is alleging that he was not immediately provided with medical care, a brief delay in providing medical

care, without more, is insufficient to constitute an Eighth Amendment violation. *See, e.g., Shapley*, 766 F.2d at 407.

### 3. *Verbal taunting and threatening actions*

To the extent that plaintiff is purporting to raise a claim pursuant to the Eighth Amendment arising from his allegations that Officers Nettleton and Biallas "would taunt plaintiff through the Plaza Central Control window" while plaintiff was held in the "3' x 3' cage" (ECF No. at 6), or that these defendants threatened him with pepper spray and batons (*id.* at 5, 12) after plaintiff refused Officer Nettleston's order to remove the sign from his back, threats or verbal harassment do not give rise to a federal civil rights claim. *See Watison*, 668 F.3d at 1113 ("the exchange of verbal insults between inmates and guards is a constant, daily ritual observed in this nation's prisons of which we do not approve, but which do not violate the Eighth Amendment" (internal quotation marks omitted)); *Keenan v. Hall*, 83 F.3d 1083, 1092 (9th Cir. 1996), *amended by* 135 F.3d 1318 (9th Cir. 1998) (verbal harassment is not cognizable as a constitutional deprivation under §1983); *Oltarzewski v. Ruggiero*, 830 F.2d 136, 139 (9th Cir. 1987) (verbal harassment or abuse is not constitutional deprivation under § 1983); *Gaut v. Sunn*, 810 F.2d 923, 925 (9th Cir. 1987) (prison guards' threat of bodily harm failed to state a claim under §1983).

### 4. *Conditions of confinement*

To the extent that plaintiff may be purporting to raise a claim pursuant to the Eighth Amendment arising from the conditions of his confinement while he was held in the "3' x 3' cage", the Eighth Amendment does not mandate that prisons be comfortable (*see Rhodes v. Chapman*, 452 U.S. 337, 349 (1981)), or that they provide every amenity that a prisoner might find desirable (*see Hoptowit v. Ray*, 682 F.2d 1237, 1246 (9th Cir. 1982)), but it will not permit inhumane prison

conditions. *See Farmer v. Brennan*, 511 U.S. 825, 832 (1994). "Prison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety." *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000). "The circumstances, nature, and duration of a deprivation of these necessities must be considered in determining whether a constitutional violation has occurred. 'The more basic the need, the shorter the time it can be withheld.'" *Id.* (citing *Hoptowit*, 682 F.2d at 1259); *see also Foster v. Runnels*, 554 F.3d 807, 812 (9th Cir. 2009) (finding the "repeated and unjustified failure" to provide "adequate sustenance on a daily basis" can constitute cruel and unusual punishment).

Here, plaintiff appears to allege that unspecified prison officials refused his request to use the restroom for "over an hour" (ECF No. 1 at 8-9), and that he was held in a "3'x3' cage for three and a half (3 1/2) hours" (*id.* at 8). These brief deprivations appear insufficient to allege that plaintiff was confined under conditions that were objectively serious enough to be considered cruel and unusual. *See Wilson v. Seiter*, 501 U.S. 294, 298-99 (1991).

Accordingly, the Court finds that plaintiff's factual allegations in the Complaint, even accepted as true and construed in the light most favorable to plaintiff, appear insufficient to nudge any claim pursuant to the Eighth Amendment "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

**E.    Supervisory defendant**

Plaintiff names Acting Associate Warden Core as a defendant, but the Complaint does not set forth any factual allegations, or appear to assert any claims, against this defendant. Rather, plaintiff appears to be seeking to hold this defendant liable based solely on his or her supervisory role. However, the Supreme Court has emphasized that "Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior." *Iqbal*, 556 U.S. at 676. Accordingly, plaintiff must allege that each

defendant "through the official's own individual actions, has violated the Constitution." *Id.* at 676-77 ("each Government official, his or her title notwithstanding, is only liable for his or her own misconduct"). Further, to the extent that plaintiff is purporting to hold any supervisory defendant liable on a theory that a particular defendant failed to take action in response to a *pattern* of constitutional violations, plaintiff's Complaint fails to set forth any factual allegations pertaining to any other similar incidents. Allegations of one incident do not raise a reasonable inference either that inadequate training caused the alleged constitutional violation of which plaintiff complains, or that any supervisory defendant was deliberately indifferent to a lack of training. *See Marsh v. County of San Diego*, 680 F.3d 1148, 1159 (9th Cir. 2012) (allegations of an isolated instance of a constitutional violation are insufficient to support a "failure to train" theory).

Accordingly, the Court finds that the Complaint fails to set forth any factual allegations plausibly suggesting that the execution of any specific policy, ordinance, regulation, custom or the like was the "actionable cause" of any alleged constitutional violation. *See Tsao*, 698 F.3d at 1146; *Lee v. City of Los Angeles*, 250 F.3d 668, 681-82 (9th Cir. 2001) (plaintiff must allege that the local entity's custom or policy was the "moving force behind the constitutional violation[s]").

## F. Disciplinary hearing

Plaintiff's "Claim No. 3" appears to allege that the loss of credit he was assessed following a disciplinary hearing was retaliatory and violated the First Amendment. Plaintiff alleges that after he was found guilty on a RVR, he was assessed a "credit loss of 30 days." Later, the matter was "re-adjudicated," and he was assed a "24 day loss of credit." (ECF No. 1 at 10-11, 13-14.)

First, to the extent that plaintiff may be seeking to have the guilty finding on the RVR set aside, a petition for habeas corpus is a prisoner's sole judicial remedy when attacking "the validity of the fact or length of … confinement." *Preiser v.*

*Rodriguez*, 411 U.S. 475, 489-90 (1973); *Young v. Kenny*, 907 F.2d 874, 875 (9th Cir. 1990). Further, a prisoner's challenge to a disciplinary action that necessarily implicates the length of his or her confinement must be brought in a petition for habeas corpus. *See Edwards v. Balisok*, 520 U.S. 641, 648 (1997) (barring § 1983 challenge to prison disciplinary hearing because success on the claim would result in automatic reversal of a disciplinary sanction); *Wolff v. McDonnell*, 418 U.S. 539, 554-55 (1974) (holding that prisoners may not use § 1983 to obtain restoration of good-time credits). Thus, a plaintiff may not use a civil rights action to seek expungement of his disciplinary conviction(s), or to seek the restoration of any lost credits *if those credits necessarily* implicate the length of his confinement. Such relief only is available in a habeas corpus action.

Second, to the extent that plaintiff may be attempting to use a civil rights action to seek monetary damages for an allegedly unlawful disciplinary action where success would *necessarily* implicate the fact or duration of his confinement, his claims are not cognizable under § 1983 unless and until plaintiff can show that "the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994). Under *Heck*, if a judgment in favor of a plaintiff on a civil rights action *necessarily* will imply the invalidity of his or her conviction or sentence, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence already has been invalidated. *Id.*. Thus:

> [A] state prisoner's § 1983 action is barred (absent prior invalidation) – no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings) – *if* success in that action would necessarily demonstrate the invalidity of confinement or its duration.

*Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005) (emphasis in original); *see also*

*Skinner v. Switzer*, 562 U.S. 521, 525 (2011) ("Where the prisoner's claim would not 'necessarily spell speedier release,' however, suit may be brought under § 1983."); *Nettles v. Grounds*, 830 F.3d 922, 935 (9th Cir. 2016) (en banc) ("challenges to disciplinary proceedings are barred by *Heck only if* the § 1983 action would be 'seeking a judgment at odds with [the prisoner's] conviction or with the State's calculation of time to be served.'") (emphasis added), *cert. denied*, 137 S. Ct. 645 (2017); *see also Wilkerson v. Wheeler*, 772 F.3d 834, 840 (9th Cir. 2014) (noting that, subsequent to *Balisok*, the "Supreme Court has clarified that *Heck* does not bar a § 1983 claim that 'threatens no consequence for [an inmate's] conviction or the duration of [his or her sentence].'" (alterations in original)).

Accordingly, to the extent that success of any of plaintiff's claims herein would demonstrate the invalidity of a disciplinary action that resulted in the loss of credit that *necessarily* implicates the length of plaintiff's sentence, plaintiff must either demonstrate that the disciplinary conviction already has been invalidated or raise such claim in a habeas petition.

************

If plaintiff still desires to pursue this action**, he is ORDERED to file a First Amended Complaint no later than thirty (30) days after the date of this Order**, remedying the pleading deficiencies discussed above. The First Amended Complaint should bear the docket number assigned in this case; be labeled "First Amended Complaint"; and be complete in and of itself without reference to the original Complaint, or any other pleading, attachment, or document.

The clerk is directed to send plaintiff a blank Central District civil rights complaint form, which plaintiff is encouraged to utilize. Plaintiff is admonished that he must sign and date the civil rights complaint form, and he must use the space provided in the form to set forth all of the claims that he wishes to assert in a First Amended Complaint.

In addition, if plaintiff no longer wishes to pursue this action, he may request a voluntary dismissal of the action pursuant to Federal Rule of Civil Procedure 41(a). The clerk also is directed to attach a Notice of Dismissal form for plaintiff's convenience.

Plaintiff is further admonished that, if he fails to timely file a First Amended Complaint, or fails to remedy the deficiencies of this pleading as discussed herein, the Court will recommend that the action be dismissed with prejudice on the grounds set forth above and for failure to diligently prosecute.

**IT IS SO ORDERED**.

DATED: August 15, 2017

_____
ALEXANDER F. MacKINNON
UNITED STATES MAGISTRATE JUDGE